Good morning, Your Honors. May it please the Court, my name is Jim Armstrong. I represent the appellants in this case, PCT and Andes. There are a number of issues raised in the briefs in this case, as well as the other five that have been consolidated with it, most of which you've taken under submission. What I want to emphasize is one issue in this case, which I believe is dispositive. Putting aside the issues involving Rule 59D, whether the Court abused its discretion in denying that relief, the issues associated with the, for lack of a better term, unprecedented Rule 30b-6 pleading by deposition procedure that the District Court implemented in this case at the scheduling conference. Putting those issues aside, looking at the evidence that was actually presented by PCT in opposition to the summary judgment motion, and this was all uncontroverted. Primarily the declaration of PCT's founder, Stephen Yutzi, but then later supplemented by the Vice President, Brandon Wilson. This was a business relationship that lasted 15 years. It began in 1996. It involved a collaboration that was benefiting both parties in the sale of global products. These are coaxial cable connectors that are sold all over the world. Our client had an advantage in its intellectual property and its confidential information in manufacturing these products. That gave it an advantage. EZCon, the appellee, obviously knew that. Both parties agreed from the very beginning of their relationship that it was important, if they were going to collaborate with EZCon as the manufacturer and PCT and Andes as the designer of these products, that it was critical, it was crucial, that the confidential information exchanged between the parties to develop these products and sell them, and that included financial information as well as technical. Pricing information, delivery information, customer information. It was absolutely crucial that that information remain confidential and that both parties maintain that confidentiality. That evidence was undisputed. In particular, the declaration, the detailed declaration given by Mr. Yutzi, as an exhibit in opposition to the summary judgment motion. The district court looked at that information, looked at Mr. Yutzi's declaration in particular, and said this is insufficient. No explanation given why it was insufficient, and that violates a basic precept of summary judgment practice founded on the Celotex decision, founded on the other Ninth Circuit cases that we have cited. It is not the role of the district court to determine the weight or credibility of evidence presented in the summary judgment context. It is not up to the district court to determine that a declaration may be self-serving. That is a question for the jury. The other crucial piece, and there was other evidence as well, but the other crucial piece is the fact that these declarations, this testimony, discussed the exchange of confidential documents between both parties that they marked confidential, both EZCON, both PCT. EZCON, throughout all of these, all of the motion papers, and there were lots of them in the trial court, throughout all of those motion papers, PCT never denied that they had any obligation to not maintain confidentiality. They never explained why they would mark documents confidential if there was no overall understanding that this information was, in fact, confidential. They never explained why, and due to the discovery freeze, the disruption that was caused by the Rule 30b-6 pleading procedure implemented by the district court, we were never permitted to ask them a single question about that. We didn't depose a single witness. We had proposed in our joint discovery plan six witnesses plus two 30b-6 witnesses. Never got to take a single one of those depositions. Never got to ask any questions in this case before summary judgment was entered. And let me move on to the Rule 56d and the Rule 30b-6 situation. My firm was brought in several months after this case began, after the initial motion to dismiss was granted, dismissing all of the tort claims. The discovery was opened on July 21 of 2016. Shortly after that, the transition to my firm began. There was a whole litany of tasks that Judge Wake, the district court, had established needed to be accomplished by the time of the October scheduling conference. There was a joint discovery plan. There was initial disclosures that had to be exchanged. There was initial discovery that had to be sent out. In addition to that, remember, we're dealing with five other cases that are going on. Yes, they're consolidated, but they have their own issues. We had dispositive motions in, I think, four out of those five cases also going on at the very same time. I think EZCON tried to characterize what we did as sitting on our hands throughout this period. We certainly weren't doing that. We had half a million documents that had to be reviewed. So during the period preceding, I think it was three months preceding the scheduling conference, that's what we were doing. Then the scheduling conference happens. Judge Wake makes it very clear. Mr. Shaw, for EZCON, raised questions during the scheduling conference about how he didn't understand our contract claims, contract claims which, incidentally, were not a subject of the 12b-6 motion. He didn't understand what our theory was, and so Judge Wake very clearly says, before we launch, and that's his word, launch off on this expensive discovery requested by PCT, I have an idea. I'm going to allow Mr. Shaw, who has already noticed a 30b-6 deposition, I'm going to allow that deposition to go forward first. I'm going to narrow it to information concerning the subject matter of their complaint. What are they pleading? What is the — what are the contours of their contract claim? Now — Did anybody at that scheduling conference suggest that a motion for more definite statement or some other procedure might be used other than a 30b-6 to investigate the status of the complaint? I don't believe it was mentioned, but you've read my mind, Your Honor. I was going to point that out. If there actually was some issue or a misunderstanding of what the claim was, that was certainly an available option and certainly something that would normally be done in this kind of case. I know of no other case — I mean, we look for it. I know of no other case where a 30b-6 was substituted as a pleading. Well, that's just case management, and you may take issue with it, and it's a little unusual. But I think the more important question, at least for me, is what were you seeking with the Rule 56d motion? In other words, what do you think you could have discovered that you were precluded from discovering? Well, we did submit — the general counsel submitted a detailed 56d affidavit, which satisfied the requirements of the rule, and it was not challenged on that basis. We really wanted to pursue what we had in our joint discovery plan, the six witnesses, the two 30b-6 witnesses, including Mr. Holland of Holland Industries, which was central in how we discovered this dispute to begin with. So, no, there was absolutely — we never received a single document in discovery. And what's important here under 56d as well is that it's a particularly appropriate procedure to use when the information you are seeking is in the possession of the other party. We didn't have to. Let me just ask one other thing. Once the summary judgment motion was filed, was there any formal cessation of discovery, or could it have proceeded? No. At that point, the 30b-6 deposition, there was a four-month period based on Judge Wake's rulings at the scheduling conference where discovery was clearly frozen. After that point, again, we are scrambling to respond to the 5060 motion, other motions, dispositive motions in other cases. And so we asked the Court, use Rule 5060, halt these proceedings so that we can conduct that discovery. We didn't have the opportunity to do that. Let me just ask a different way. Was there anything between February 2017 and the filing of the motion for summary judgment and the grant of it, which I think was in September, was there anything that precluded discovery there? From February 16th? Yes. Discovery was not opened until July 21st. There was no discovery allowed prior to that time. No, but I'm talking about between the motion for summary judgment and the time it was granted. Okay. Simple question. Was there anything that precluded discovery during that period? It's kind of a yes or no question. Yes. There was. We attempted. We actually did. Okay. Thank you. Okay. I'm sorry. Thank you, Counsel. Thank you. Good morning, Your Honors. Greer Shaw for the defendants, appellees, EZ-CON Corporation and EG-TRAN Corporation, which is an appellee in one of the other appeals scheduled for this morning. The issues, I think, are pretty completely briefed. I know you're familiar with that, so I'll start by asking the court whether you have any questions for me. Well, you didn't respond to discovery, correct? That's not correct, Your Honor. In fact, we did. What documents did you produce? We produced what they asked for. They served document requests for the first time in November, and we served documents in December or January. I don't recall off the top of my head what documents they were, but they did contact me on February 1st with purported complaints about our production. They wanted to have a call to talk about that. They also wanted to talk about scheduling depositions, which evidence is that they knew discovery was open. And if they were dissatisfied with our production or they were dissatisfied with our suggestion that depositions were not necessary in view of our pending summary judgment motion, they could have raised it with the court. They could have filed a motion to compel. They could have invoked the court's discovery dispute procedures, which the court repeatedly reminded the parties about. In fact, one of the reasons why Judge Wake denied 56D relief was he found that they were not diligent, that they didn't invoke the court's dispute resolution procedures for discovery issues. Let me just go back to this issue about not having an opportunity for discovery. As my colleague mentioned, discovery opened July 21st, 2016, and for three months, over three months, until the scheduling conference, they did nothing. Absolutely nothing. Served no document requests, no interrogatories, no deposition notices, nothing. In the meantime, on behalf of my clients, I did all of those things. At some point that summer, they switched counsel. The Sachs-Tierney firm appeared, I believe, late August. We had a scheduling conference before the court in October, and I said, they haven't done any discovery, Judge. They've been sitting on their hands for four months. Apparently, they don't want any discovery. The judge talked about a procedure about allowing me to go forward with a 30B6 deposition, thinking that that would narrow the issues in the case. The court issued an order the next day after that conference. Didn't say anything about discovery being closed. Didn't say anything about a discovery freeze. In fact, the court expected the parties to continue with discovery, which is what I did and what they did. Two weeks later, on November 10th, they served document requests on me. They knew discovery wasn't frozen or closed. They knew that they were supposed to be doing discovery. As I said, on behalf of EZCon, we served written responses. We then served actual documents that were responsive. They had an issue with that. They thought that the production was deficient. They contacted me in February and said, hey, where's the documents? You know, you gave us some, but this is not what we asked for. Let's have a call. And we had a call. So they knew discovery was open. The fact is they just weren't diligent. By the time we filed our summary judgment motion, seven months of discovery had gone by. Discovery opportunities for both parties. They did some discovery. They did one set of document requests. They contacted me about some depositions. That's all they did. If they were dissatisfied with what I was giving them, they should have taken it up with the court. They should have filed a motion to compel. They didn't do that. Judge Wake was very clear that was a lack of diligence that supported his denial of 56D relief. I answered your question. I want to go back to the point Mr. Armstrong made about the business relationship and the collaboration as he characterized it. And what I think this leads to is an evolution of the theory of their case from what it was pled to what it's become on appeal. And they're completely different things. The way this case was pled was breach of UCC purchase orders. If you look at their First Amendment complaint, that was the basis of their breach of contract claim and that was the basis of their breach of implied covenant of good faith and fair dealing. All they alleged were purchase orders that they sent to my client, my client fulfilled. That was the theory of their case, that the purchase orders had terms and conditions, you know, fine print terms and conditions that we breached. That was the theory of their case. As it evolved in discovery and as we showed in our summary judgment papers, they couldn't prove that. They had no evidence of that. They couldn't prove, first of all, they never produced any of these purchase orders in discovery. There's a single purchase order in the appellate record, one. And to a large part of the relationship, they had a purchase order that did not even include the terms and conditions and that became a problem for them. So what did they do? They switched their entire theory and said, well, never mind the purchase order theory. Never mind the fact that we can't prove them up. Never mind the fact that we can't prove you ever agreed to these terms and conditions. Now we're saying there's this overarching oral agreement that just covered the 15 years, this umbrella confidentiality obligation that we owed to them so that anything they gave us in the course of 15 years was somehow confidential. That became their theory. That was not pled in their First Amendment complaint. It was not disclosed in discovery. It was not put in their joint discovery plan that the parties filed with the court. And so we rightly understood that it was not part of the case. It wasn't part of the case. And they knew it wasn't part of the case either because they tried to add it to their Second Amendment complaint. They sought leave to file a Second Amendment complaint, which added this new theory. They knew it wasn't in the original complaint. Even Judge Wake, when he denied their motion for leave to file the Second Amendment complaint, he noted there's this new theory. You're adding these new facts. You're adding this new breach of contract theory, and it's denied. Your motion's denied. And the judge said adding that new theory at this late stage of the case was prejudicial, that you unduly delayed, and that was an abuse of discretion. That's reviewed for abuse of discretion. The judge denied the leave to file the Second Amendment complaint before we had an opportunity to file a reply brief in support of summary judgment. But when we got the judge's denial of the Second Amendment complaint and we were preparing our reply brief, we reasonably understood that this oral argument theory was out of the case. That's what the judge told us. It's out of the case. In fact, we noted that in our summary judgment reply brief. Judge, they're presenting this new theory, but you've already ruled it's out of the case. And here we are on appeal, and now their whole theory is this implied oral agreement over the course of 15 years that was never in the pleadings. It was stricken from the case by Judge Wake by virtue of denying the Second Amendment complaint. The reason why I think that's important, Your Honors, is because we had a statute of frauds defense that we would have played had this issue been presented to us in a timely fashion. Had this oral agreement been pled in the Second Amendment complaint, or the First Amendment complaint rather, had the Second Amendment complaint been allowed, we would have presented a statute of frauds defense. And I think although it's raised for the first time on appeal, and I know it's unusual for the Court to consider an issue like that, I think in this is a circumstance where it's appropriate for the Court to consider it because the factual record is sufficiently developed. And what I mean by that is their own witness, according to their own witness, the obligation was that information was always confidential. Everything they gave us was always confidential. Well, that's a perpetual, permanent obligation. In the Rudinsky case that we cited in our brief, and the Court's own Western Chance decision, say if you've got an oral obligation that's perpetual and permanent, that's covered by the statute of frauds. And I think that's exactly what we have here. We don't need further discovery on that. Their own witness, Mr. Wilson, testimony cited in their own brief, articulates the so-called oral agreement obligation that we had, and he said it was always. That's perpetual. Thank you. Unless the Court's had any additional questions. No. Thank you, Counsel. Thank you. We'll give you one minute for rebuttal if you want one. We'll give you one minute for rebuttal if you want. Mr. Shah leaves out one very important fact. Judge Wake made it very clear when he instituted this 30B-6 pleading procedure that testimony, the facts revealed in that procedure, became part of our complaint. So the overarching oral agreement that governed since the beginning, since 1996, all the way through the era of the purchase orders, was in place, was in our complaint. It's not something that's new that's been invented on appeal. It wasn't invented later on in the case. It's by Judge Wake's order that Mr. Wilson's testimony, as Mr. Shah just admitted, concerning the oral overarching confidentiality agreement, was part of our pleadings. Unless the Court has any other questions, I'll sit down. Thank you, Counsel. The case, just argued, will be submitted for decision.
judges: Thomas, McKeown, Gould